IN THE UNITED STATES DISTRICT COURT
FOR THE WESERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| ANTWON WHITTEN, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 7:19cv00728 |
| | ) | |
| v. | ) | **MEMORANDUM OPINION** |
| | ) | |
| J.G. JOHNSON, | ) | By:  Hon. Thomas T. Cullen |
| | ) |         United States District Judge |
| Defendant. | ) | |

Plaintiff Antwon Whitten, a Virginia inmate proceeding *pro se*, filed this civil action, under 42 U.S.C. § 1983, against Correctional Officer J. G. Johnson. Whitten has raised claims of (1) excessive force, (2) retaliation by excessive force, and (3) retaliation by filing a false disciplinary charge. Defendant Johnson has filed a motion for partial summary judgment as to the retaliatory disciplinary charge claim. For the reasons stated herein, the court will deny Johnson's motion for partial summary judgment without prejudice.

## I.

The court is presented with two sets of facts—one drawn from Whitten's verified complaint, and the other drawn from Johnson's pleadings. The facts contained in each are briefly summarized as follows, and for purposes of summary judgment, all reasonable inferences are drawn in Whitten's favor.

Whitten is an inmate housed at Red Onion State Prison, a supermax facility in Wise County. According to Whitten, on the morning of January 18, 2018, Johnson and another officer arrived at his cell to take Whitten to appear in court regarding a civil suit he filed against other correctional officers. (Compl. ¶ 4 at 3 [ECF No. 1].) Whitten alleges that Johnson "knew

[Whitten] was on [his] way to court to testify against [correctional officers]," and specifically arrived with an intent "to create a situation . . . out of retaliation of the law suit [he] was on [his] way to court for against a fellow [corrections officer]." (*Id.* ¶ 9 at 5.) Johnson placed Whitten in handcuffs and leg shackles and positioned him with his back to a railing and his front facing Johnson. (*Id.* ¶ 15 at 7.) Meanwhile, the other officer searched Whitten's legal papers for contraband. Whitten apparently disobeyed Johnson's commands to look straight ahead at him, instead of watching the officer searching his legal papers. (*Id.* ¶ 4 at 3.)

At this point, the two accounts diverge. According to Whitten, Johnson "pulled [Whitten] towards him, [his] face facing him. [Whitten] pulled back, [and Johnson] then took [Whitten] to the ground." (*Id.*) On the other hand, Johnson asserts that after Whitten was handcuffed, Whitten "turned in [his] direction trying to elbow [him]." (Def. Br. in Supp. pg. 1, May 26, 2020 [ECF No. 31-1].) Whitten denies that he took any aggressive action towards or against Johnson. (ECF No. 1 ¶ 15 at 7.) He also alleges that, as he was being removed from the prison pod following the altercation, Johnson told him that "when [Whitten] get[s] back [Johnson] was going to do more than that." (*Id.* ¶ 27 at 10.)

The parties do not dispute that the incident happened between 7:00 and 7:30 in the morning. By 9:00 a.m., Johnson had submitted a disciplinary offense report alleging that Whitten "became irate and tried to elbow [Johnson] in the face. Offender placed on the ground. No force used." (ECF No. 31-1 pg. 1.) Whitten denied the allegations and asserted that Johnson acted without provocation. (*Id.* at 4.) Whitten requested that the Disciplinary Hearing Officer ("DHO") review security footage of the altercation, but his request was denied. (*Id.*) The DHO obtained a statement from the accompanying officer that, although he

was not present for the alleged attempted elbowing, he did see Whitten trying to turn around while he was inspecting Whitten's papers. (*Id.* at 7.) The DHO consequently decided "that [Whitten] became disruptive and his actions did constitute an attempted assault," and fined Whitten $15. (*Id.* at 8.)

Johnson has construed Whitten's complaint as alleging three causes of action: (1) that Johnson used excessive force, (2) that Johnson's use of excessive force constituted unlawful retaliation, and (3) that Johnson's disciplinary offense report was lodged in retaliation. Johnson has conceded that the first two causes of action are subject to genuine disputes of material fact and should therefore proceed to trial. Johnson, however, argues this court must grant summary judgment in his favor on the disciplinary-charge claim.

## II.

The Federal Rules of Civil Procedure provide that a court should grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "As to materiality . . . [o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In order to preclude summary judgment, the dispute about a material fact must be "'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*; *see also JKC Holding Co. v. Washington Sports Ventures, Inc.*, 264 F.3d 459, 465 (4th Cir. 2001). In considering a motion for summary judgment under Rule 56, a court must view the record as a whole and draw all reasonable

inferences in the light most favorable to the nonmoving party. *See, e.g., Celotex Corp. v. Catrett*, 477 U.S. 317, 322–24 (1986); *Shaw v. Stroud*, 13 F.3d 791, 798 (4th Cir. 1994).

III.

Prison officials may not retaliate against an inmate for exercising his constitutional right to access the court, *Hudspeth v. Figgins*, 584 F.2d 1345, 1347 (4th Cir. 1978), nor may they take actions that violate his "First Amendment right to be free from retaliation for filing a grievance," *Booker v. S.C. Dep't of Corr.*, 855 F.3d 533, 541 (4th Cir. 2017). On the other hand, claims of retaliation against prison inmates must be examined with care because many actions by prison officials are "by definition 'retaliatory' in the sense that [they are in] respon[se] to prisoner misconduct" or other concerning behaviors. *Cochran v. Morris*, 73 F.3d 1310, 1317 (4th Cir. 1996); *Adams v. Rice*, 40 F.3d 72, 74 (4th Cir. 1994).

To prevail on a retaliation claim under 42 U.S.C. § 1983, a plaintiff must demonstrate three elements: (1) he engaged in protected activity, (2) the defendant took some action that adversely affected the plaintiff, and (3) there was a causal relationship between the plaintiff's protected activity and the defendant's conduct. *Martin v. Duffy*, 858 F.3d 239, 249 (4th Cir. 2017) ("*Martin I*"). It is well-established that the filing of a grievance or a lawsuit is protected conduct that satisfies the first element.

The second element is satisfied if the defendant took some action which "would like likely deter prisoners of ordinary firmness from exercising their . . . rights." *Booker*, 855 F.3d at 537 (quoting *Booker v. S. Carolina Dep't. of Corr.*, 583 F. App'x 43, 45 (4th Cir. 2014)). Even legitimate disciplinary actions can constitute adverse actions and satisfy the "causation" element. *E.g. Baker v. Clarke*, No. 7:18-cv-00620, 2020 WL 6703436, at *5 (W.D. Va. Nov. 13,

2020) ("[Baker] also alleges that, thereafter, because of disciplinary convictions, officials took away his ability to earn good-conduct time, which the court finds to be an adverse action for purposes of a retaliation claim."); *see also Watson v. Rozum*, 834 F.3d 417 (3d. Cir. 2016) (concluding that a prisoner charged with misconduct "clearly suffered an adverse consequence").

District courts in the Fourth Circuit have generally followed the rule of the Eighth Circuit that "[a]n inmate may not state a claim of retaliation where the 'discipline was imparted for acts that a prisoner was not entitled to perform,' and which were unrelated to the inmate's grievance or lawsuit." *Baker*, 2020 WL 6703436, at *5 (citing *Cowans v. Warren*, 150 F.3d 910, 912 (8th Cir. 1998)). Applying this rule, a court is compelled to grant summary judgment in a defendant's favor as long as a defendant could provide "some evidence" to support a disciplinary hearing's finding of guilt. *See Henderson v. Baird*, 29 F.3d 464 (8th Cir. 1994). In his brief, Johnson relies heavily upon this line of cases.

After the parties briefed Johnson's motion for summary judgment, the Fourth Circuit decided *Martin v. Duffy*, 977 F.3d 294 (4th Cir. 2020) ("*Martin II*"). As a matter of "first impression," the Fourth Circuit adopted the burden-shifting standard from *Mt. Healthy City School District Board of Education v. Doyle*, 429 U.S. 274 (1977), for examining prisoners' retaliation claims. *Martin II* appears to reject the "some evidence" standard that courts in this district have applied—and upon which Johnson relies—adopting instead the "same-decision" test. That test holds that, once a party has presented a *prima facie* case of retaliation, the opposing party may nevertheless prevail by proving "it would have reached the same decision . . . in the

absence of the protected conduct." *Martin II*, 977 F.d3 at 299 (quoting *Mt. Healthy*, 429 U.S. at 283).

In light of *Martin II*, which is controlling precedent from the Fourth Circuit, this court finds that it would be imprudent to decide this case under new controlling authority that neither party has had the opportunity to brief or argue. Therefore, the court will deny Johnson's motion for summary judgment without prejudice. If, after review of the *Martin II*, Defendant believes that the record supports his request for summary judgment, he may refile the motion.

IV.

In light of the Fourth Circuit's ruling in *Martin II*, the court will deny the defendants' motion for summary judgment, without prejudice.

**ENTERED** this 30th day of March, 2021.

*/s/ Thomas T. Cullen*
HON. THOMAS T. CULLEN
UNITED STATES DISTRICT JUDGE