IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| ANTWON WHITTEN, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 7:19-cv-00728 |
| | ) | |
| v. | ) | **MEMORANDUM OPINION** |
| | ) | |
| J. G. JOHNSON, | ) | By: Hon. Thomas T. Cullen |
| | ) | United States District Judge |
| Defendant. | ) | |

Plaintiff Antwon Whitten, a Virginia inmate proceeding *pro se*, filed this civil action under 42 U.S.C. § 1983 against Correctional Officer J. G. Johnson, asserting claims of excessive force and retaliation. On March 30, 2021, the court denied Johnson's motion for partial summary judgment. The case was originally set for trial on September 13–14, 2021. On August 12, 2021, the court continued the trial so that the parties could engage in mediation. The mediation efforts proved unsuccessful, and the case will be reset for trial by separate order.

The matter is presently before the court on Whitten's motion for spoliation of evidence (ECF No. 50) and his motion *in limine* (ECF No. 79).[1] For the following reasons, the court will deny the motions without prejudice.

## I. Background

The claims asserted in this action stem from an incident that occurred in the C-4 housing unit at Red Onion State Prison ("Red Onion") on the morning of January 18, 2018.

---

[1] The court previously referred the spoliation motion to a United States Magistrate Judge. Because the arguments raised in the motion overlap with those asserted in the motion *in limine*, the court will withdraw the reference to the magistrate judge and rule on both motions.

Johnson was one of two correctional officers who arrived at Whitten's cell to transport him to the federal courthouse in Big Stone Gap, Virginia, for a civil jury trial. As Whitten was being escorted away from his cell, Johnson took him to the ground. Whitten alleges that the use of force was entirely unjustified. Johnson, on the other hand, contends that Whitten tried to elbow him after being handcuffed. As a result of the incident, Whitten received a disciplinary charge for which he was found guilty.

Whitten filed suit against Johnson on October 30, 2019, nearly two years after the incident occurred. On May 26, 2020, Johnson filed a motion for partial summary judgment. The court denied Johnson's motion on March 30, 2021. (ECF No. 55.)

Before the court ruled on the motion for partial summary judgment, Whitten filed the pending motion for spoliation of evidence related to "security video tape footage inside [the] pod." (ECF No. 50 at 1.) In the motion, Whitten states that he was given the opportunity to review the preserved camera footage with a correctional officer but that only one of the pod cameras was shown to him. (*Id.* at 2.) Although the officer advised Whitten that the footage was preserved from the camera that had "the best angle," Whitten asserts that he "cannot accept [the officer's] opinion," and that it is not appropriate "to select only one angle without [Whitten] seeing all angles." (*Id.*) Whitten states that his "claim is intentional spoliation of the other security video tapes in the C-4 housing unit, as they could have very well contained actual proof of [his] claims . . . ." (*Id.* at 3.) He "seeks from this court a ruling in [his] favor for 'judgment as a matter of law'" based on "the absence(s) of the other (3) to (4) tapes." (*Id.* at 3–4, 8.)

The court held a status conference with the parties on July 29, 2021, during which the court addressed Whitten's motion for spoliation of evidence. On the day before the status conference, the court entered an oral order directing Johnson to file a response indicating "the status of any existing video evidence, including whether all video evidence depicting the incident was produced to Plaintiff and whether any video evidence was deleted or destroyed." (ECF No. 62.) Johnson filed a response to the oral order that same day, along with an affidavit from C. Stanley, the Institutional Investigator at Red Onion. (ECF No. 63.)

By order entered July 30, 2021, the court took the spoliation motion under advisement and directed Johnson to file a formal brief in opposition to the motion within 14 days. (ECF No. 69.) Prior to the expiration of the 14-day period, and upon the agreement of the parties, the court referred the case to a magistrate judge to conduct mediation proceedings. (ECF No. 72.) By order entered August 12, 2021, the court continued the trial and suspended all remaining pretrial deadlines in order to allow sufficient time for the parties and the magistrate judge to prepare for and complete those proceedings. (ECF No. 74.)

On August 20, 2021, Whitten filed the pending motion *in limine*, seeking "to prevent the spoliated evidence" from being introduced at trial, as well as "the late discovery recently submitted by Defendant Johnson." (ECF No. 79 at 4.) Whitten repeatedly argues that "the court should have held the summary judgment rulings in abeyance until all motions [and] other papers were ruled on" (*id.* at 3), and that no further proceedings relevant to the spoliation motion or discovery should have been conducted after the court decided Johnson's motion for partial summary judgment. Whitten argues that the video footage preserved by Red Onion is "spoliated evidence which only aids the defendant" and that it should not be introduced at

trial. (*Id.* at 8.) He further contends that "errors of/from bench & bar" warrant the entry of judgment in his favor. (*Id.* at 7.)

On September 14, 2021, after being notified that the mediation was unsuccessful, the court directed Johnson to file a response to the motion for spoliation of evidence within seven days. (ECF No. 84.) Johnson subsequently filed a response in opposition on September 24, 2021, three days after the response deadline expired. (ECF No. 87.) The response is supported by several exhibits, including the affidavit from Investigator Stanley that was previously filed on July 29, 2021; a copy of the video footage that was retained by prison officials; and still photographs that were taken from two other video cameras in the C-4 housing unit at Red Onion. Stanley states in his affidavit that video footage from the other video cameras would not have clearly documented the incident at issue, given the location of the incident in relation to the cameras:

> Specifically, as can be seen by the retained MaxPro video footage, this particular incident happened on the upper tier of housing unit C-4, directly in front of cell 413. The camera footage that was retained is aimed directly towards that area of the pod, and it shows the interaction between the inmate and the officer in some detail. Another MaxPro camera is in a far corner of the housing unit, generally aimed towards the control booth and pod entrance. The camera does not depict the area directly in front of cell 413. The third MaxPro camera provides a "bird's eye" view of the entire housing unit. Although the area just in front of cell 413 can be seen from this camera view, it is much further away and does not show that area with the same clarity as the camera angle from which the video footage was retained.

(ECF No. 87-4 at ¶ 5) (footnote omitted). Stanley's affidavit further explains that because the MaxPro camera aimed directly at Whitten's cell "provided the best angle to capture this

particular incident, and because it did, in fact, capture details of the relevant incident," prison officials preserved the video footage from that camera. (*Id.* ¶ 6.)

Whitten filed a reply to Johnson's response in opposition on October 4, 2021, in which he argues that "judgment in [his] favor is warranted." (ECF No. 88 at 11.) In addition to emphasizing that Johnson failed to timely respond to his spoliation motion, Whitten argues that a fourth video camera can be seen in the photographs submitted by Johnson and that the fourth camera "was there on 1-18-2018." (*Id.* at 8.) Whitten contends that footage from the fourth camera would have shown the back of his body, including his elbows. (*Id.*) Whitten also argues that he asked prison officials to save footage from a handheld camera that was used in the "clothing exchange room" following the incident in question. (*Id.* at 5.) Whitten cites to an offender request dated February 11, 2018, in which he asked that "video footage of 1-18-2018 at approx[imately] 7 AM – 8:25 AM in C-4 pod be preserved for legal litigation against C/O Johnson." (ECF No. 88-1 at 1.) Whitten also asked that footage be preserved from "the clothing exchange room for the same day just before [he] changed clothes for court." (*Id.*) Whitten reported that "Sgt. Williams used a handheld video camera to record [his] injuries." (*Id.*) In response to the request, Lieutenant J. Fannin advised Whitten that "[t]his incident has been saved." (*Id.*)

## II. Discussion

### A. Motion for Spoliation of Evidence

Whitten's first motion seeks the imposition of sanctions for spoliation of evidence. Whitten argues that Johnson should be sanctioned because prison officials did not preserve

"security video tape footage [from] inside the pod." (ECF No. 50 at 1.) Whitten specifically requests that the court enter judgment in his favor.

### 1. Untimeliness of Johnson's Response

Before turning to the merits of the initial motion, the court will address Johnson's failure to file a timely response. On September 14, 2021, the court specifically directed Johnson to file a response to the spoliation motion within seven days, meaning that the response was due on September 21, 2021. Johnson did not file his response until September 24, 2021. Because the response was untimely, Whitten contends that the court should summarily grant the spoliation motion and enter judgment in his favor.

The United States Court of Appeals for the Fourth Circuit has recognized that courts "have an inherent power to impose order, respect, decorum, silence, and compliance with lawful mandates." *United States v. Shaffer Equip. Co.*, 11 F.3d 450, 461 (4th Cir. 1993). "A court's inherent power includes the ability to order the dismissal of case" or to enter judgment by default. *Projects Mgmt. Co. v. Dyncorp Int'l LLC*, 734 F.3d 366, 373 (4th Cir. 2013); *see also Barnhill v. United States*, 11 F.3d 1360, 1367 (7th Cir. 1993) (noting that "it is now clear that a federal court has the inherent power to sanction for conduct which abuses the judicial process" and that, "pursuant to this power, a court may impose the severe sanction of dismissal with prejudice (or its equivalent, judgment) if the circumstances so warrant"). Such orders, however, "must be entered with the greatest caution." *Shaffer Equip.*, 11 F.3d at 461. When a court dismisses a case or enters judgment "other than on the merits," the court's decision "must be supported by a finding of bad faith or other similar abuse." *Hensley v. Alcon Labs., Inc.*, 277 F.3d 535, 542 (4th Cir. 2002). "Even then, because it is 'the most extreme sanction,'

dismissal [or default judgment] may not be entered without the court's first considering numerous factors, including the availability of other sanctions." *Id.* (quoting *Shaffer Equip.*, 11 F.3d at 462–63). Other relevant factors include: (1) "the degree of the wrongdoer's culpability"; (2) "the extent of the client's blameworthiness if the wrongful conduct is committed by its attorney"; (3) "the prejudice to the judicial process and the administration of justice"; (4) "the prejudice to the victim"; and (5) "the public interest." *Shaffer Equip.*, 11 F.3d at 462–63.

In this case, Johnson's response to the spoliation motion was filed three days late. Without question, Johnson's counsel "should have filed this response by the deadline, or should have filed a motion for extension of time before the deadline elapsed, or at the very least should have filed a motion to permit the untimely filing due to excusable neglect." *Strojnik v. Hyatt Hotels Corp.*, No. 2:21-cv-00741, 2022 U.S. Dist. LEXIS 29957, at *23 (D. Ariz. Feb. 18, 2022). Nonetheless, the three-day delay on the part of counsel did not significantly interfere with the orderly administration of justice, severely harm the public interest in maintaining the integrity of the judicial process, or result in any prejudice to Whitten. *See Projects Mgmt. Co.*, 734 F.3d at 374. Nor is there any indication that the delay resulted from "bad faith or similar abuse" on the part of Johnson's counsel. *Hensley*, 277 F.3d at 542. Under these circumstances, the court declines to summarily grant the spoliation motion or enter default judgment in Whitten's favor. Johnson and his counsel are warned, however, that failure to comply with deadlines in the future could result in the imposition of sanctions. *See Strojnik*, 2022 U.S. Dist. LEXIS 29957, at * 23 (concluding that "the less drastic sanction of a warning . . . that deadlines must be heeded in the future [would] suffice" to address the untimeliness of a party's response); *see*

*also First Am. Title Ins. Co. v. Borniva*, No. 8:19-cv-3233, 2022 U.S. Dist. LEXIS 40682, at *9 (D. Md. Mar. 8, 2022) (declining to enter default judgment and finding that "sanctions, beyond an admonition to [the defendant] to comply with future deadlines," were not warranted for the defendant's failure to comply with a discovery order).

### 2. Spoliation Framework

Spoliation of evidence "refers to the destruction or material alteration of evidence or to the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation." *Silvestri v. Gen Motors Corp.*, 271 F.3d 583, 590 (4th Cir. 2001). "A court's power to sanction spoliation derives from two sources: (1) Fed. R. Civ. P. 37(e); and (2) its inherent power . . . to redress conduct which abuses the judicial process." *Steves & Sons, Inc. v. Jeld-Wen, Inc.*, 327 F.R.D. 96, 103 (E.D. Va. 2018) (cleaned up).

Rule 37(e) provides the legal framework for evaluating spoliation claims involving electronically stored information ("ESI"), including recorded video footage. *Id.* Under this rule,

> a movant must satisfy four threshold requirements before a court decides if any spoliation sanction is appropriate: (1) ESI should have been preserved; (2) ESI was lost; (3) the loss was due to a party's failure to take reasonable steps to preserve the ESI; and (4) the ESI cannot be restored or replaced through additional discovery.

*Id.* at 104.

These threshold elements mirror the traditional test for determining whether spoliation occurred. *See id.* (summarizing the traditional test for spoliation and noting that it is "similar to the Rule 37(e) framework"). Under that test, if a party had an obligation to preserve evidence when it was lost or destroyed, "any level of fault, whether it is bad faith, willfulness,

gross negligence, or ordinary negligence, suffices to support a finding of spoliation." *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 803 F. Supp. 2d 469, 497 (E.D. Va. 2011).

If a movant satisfies the threshold requirements for establishing that spoliation occurred, the court must determine whether sanctions are appropriate. Under Rule 37(e), the court has two options. "First, 'upon finding prejudice to another party from loss of the information, [the court] may order measures no greater than necessary to cure the prejudice.'" *Thompson v. Clarke*, No. 7:17-cv-00111, 2019 U.S. Dist. LEXIS 145494, at *7 (W.D. Va. Aug. 27, 2019) (quoting Fed. R. Civ. P. 37(e)(1)). "Second, and 'only upon finding that the party acted with the intent to deprive another party of the information's use in the litigation,' the court may presume that the lost information was unfavorable to the party who lost it, instruct the jury that it may or must so presume, or dismiss the action or enter a default judgment." *Id.* (quoting Fed. R. Civ. P. 37(e)(2)).

### 3. Video Footage at Issue

With these principles in mind, the court will first consider the video footage addressed in Johnson's response in opposition to Whitten's motion. The court will then turn to the additional video cameras identified in Whitten's reply brief.

#### i. Footage from the Second and Third Cameras

It is undisputed that prison officials retained footage from a video camera in the C-4 housing unit that captured the incident in question. The court has reviewed the relevant video footage from that camera ("Camera One"). As noted in Investigator Stanley's affidavit, the camera was aimed directly toward the area of the housing unit where the incident occurred. The recorded footage, which has no audio, shows two officers waiting outside Whitten's cell

on the second level of the housing unit on the morning of January 18, 2018. At 7:23 a.m., one of the officers can be seen entering cell 412, placing Whitten in handcuffs, and leading him out of the cell, while the other officer stands nearby. At approximately 7:24 a.m., that same officer can be seen taking Whitten to the ground in front of cell 413.

It is also undisputed that prison officials did not retain footage from two other cameras in the C-4 housing unit. According to Investigator Stanley's affidavit and the photographs submitted by Johnson, a second camera ("Camera Two") was aimed toward a different side of the housing unit, away from the area in which the incident occurred. The photograph taken from Camera Two indicates that the incident would not have been recorded on the camera, since the area in front of Whitten's cell, where the incident occurred, cannot be seen in the photograph. The third camera ("Camera Three") identified by Investigator Stanley appears to be located above the housing unit, and it provides a bird's eye view of the entire unit. The photograph taken from Camera Three confirms that is focused from "much further away" and that, even if had recorded the incident at issue, it would not have "show[n] the area [where the incident occurred] with the same clarity as the camera from which the video footage was retained." (ECF No. 87-4 at ¶ 5.)

To the extent Whitten seeks the entry of default judgment as a sanction for failing to retain footage from Camera Two and Camera Three, the court concludes that he is not entitled to such relief. First, Whitten has not made a threshold showing that footage from these particular cameras "should have been preserved." Fed. R. Civ. P. 37(e). "A party seeking sanctions based on the spoliation of evidence must establish . . . that the alleged spoliator had a duty to preserve material evidence." *Turner v. United States*, 736 F.3d 274, 282 (4th Cir. 2013).

In other words, "[o]nce a party anticipates litigation, it must 'preserve what it knows, or reasonably should know, is relevant [to] the action.'" *Haysbert v. Bloomin' Brands, Inc.*, No. 4:20-cv-00121, 2021 U.S. Dist. LEXIS 211630, at *16 (E.D. Va. July 9, 2021) (quoting *Kolon Indus.*, 803 F. Supp. 2d at 496). In the context of spoliation, courts have held that "a party must establish relevance 'by offering probative evidence, not the hyperbole of argument,' that the lost materials were 'likely to have been favorable to his case.'" *Thompson*, 2019 U.S. Dist. LEXIS 145494, at *12 (quoting *Kolon Indus.*, 803 F. Supp. 2d at 498); *see also Sampson v. City of Cambridge*, 251 F.R.D. 172, 180 (D. Md. 2008) (explaining that, for purposes of spoliation, a party must "establish a reasonable possibility, based on concrete evidence rather than fertile imagination, that access to the lost materials would have produced evidence favorable to his cause") (internal quotation marks and citation omitted).

Whitten is unable to satisfy this standard with respect to footage from Camera Two or Camera Three. Based on the location of Camera Two, which was directed toward a different side of the housing unit, Whitten cannot demonstrate that footage from that camera would have shown any portion of the incident at issue. Similarly, while footage from Camera Three could have potentially captured the incident, the view from that camera would have been at such a distance as to make the interaction between Whitten and Johnson considerably more difficult to see than the footage retained from Camera One. Consequently, Whitten is unable to meet his burden of establishing that footage from Camera Two and Camera Three contained relevant or material evidence that should have been preserved.

Second, and for similar reasons, the court is unable to find that the failure to preserve footage from Camera Two or Camera Three caused any "prejudice to [Whitten]," as required

to impose sanctions under Rule 37(e)(1). "Generally, courts find prejudice when spoliation compromises a party's ability to present his case." *Knight v. Boehringer Ingelheim Pharms., Inc.*, 323 F. Supp. 3d 845 (S.D.W. Va. 2018). Stated differently, "prejudice arises when a party 'cannot present evidence essential to its underlying claim.'" *Id.* (quoting *Victor Stanley, Inc. v. Creative Pipe, Inc.*, 269 F.R.D. 497, 532 (D. Md. 2010)). Based on where Camera Two and Camera Three were located in the housing unit, and in light of the fact that prison officials retained footage from Camera One (which was aimed directly at Whitten's cell and captured the incident at issue), the absence of footage from Camera Two and Camera Three does not prevent Whitten from presenting evidence essential to his case. And without a showing of prejudice, sanctions cannot be imposed under Rule 37(e)(1) for the failure to retain footage from those two cameras. *See Britney Gobble Photography, LLC v. Sinclair Broad. Grp., Inc.*, No. 1:18-cv-03403, 2020 U.S. Dist. LEXIS 62708, at *33 (D. Md. Apr. 9, 2020) (emphasizing that "Rule 37(e)(1) requires a showing of prejudice").

Third and finally, the court is unable to find that sanctions are warranted under Rule 37(e)(2). Under this rule, the court "may" impose more severe sanctions, including the entry of default judgment, "only upon finding that the party acted with the intent to deprive another party of the information's use in the litigation." Fed. R. Civ. P. 37(e)(2). Based on the respective locations of Camera Two and Camera Three, as well as the still photographs taken from those cameras, the court has no reason to believe that video footage from either of those cameras was erased with the intent to deprive Whitten of the footage's use at trial. Moreover, the potential sanctions outlined in Rule 37(e)(2) "are all disproportionately severe when compared to the lack of prejudice from the destruction of the materials here—which were extremely

unlikely to be useful to any party." *Thompson*, 2019 U.S. Dist. LEXIS 145494, at *13–14. Thus, even if Whitten could establish all four threshold requirements, the court would not grant the requested sanction of a default judgment.

For these reasons, the court declines to impose sanctions for the failure to retain video footage from Camera Two and Camera Three.

### ii. Footage from Additional Cameras

In his reply brief, Whitten identifies at least two other cameras that were not specifically mentioned in his initial motion. He asserts that a fourth camera can be seen above the entry door in the photographs submitted by Johnson.[2] Whitten also notes that he requested prison officials to preserve video footage recorded in another room following the use of force, including footage from a handheld camera. Because the additional cameras are identified for the first time in Whitten's reply brief, Johnson has not had the opportunity to respond to Whitten's arguments.

For these reasons, the court will deny the initial spoliation motion without prejudice and construe Whitten's reply brief as a second motion for spoliation sanctions *See, e.g.*, *Slone v. Ariz. Dep't of Corr.*, No. 2:02-cv-01128, 2005 U.S. Dist. LEXIS 59452, at *1 (D. Ariz. June 10, 2005) (noting that the court previously denied a motion filed by the plaintiff "but construed his reply as a new motion . . . because it raised new allegations"). The court will require Johnson to file a response to the second motion within 14 days, and, if necessary, the court will conduct a pretrial evidentiary hearing to determine whether spoliation of video evidence occurred and, if it did, whether a spoliation sanction is warranted.

---

[2] Without additional input from the parties, the court cannot determine whether a fourth camera can be seen in the photographs.

### B. Motion in Limine

Whitten has also filed a "motion in limine and objections to Defendant's use of late discovery material submitted after summary judgment . . . ." (ECF No. 79 at 1.) In the motion, Whitten seeks to "prevent the spoliated evidence"—the preserved video footage from Camera One—from being introduced at trial, as well as "the late discovery recently submitted by Defendant Johnson." (*Id.* at 4.) Whitten also repeatedly argues that no further proceedings relevant to the spoliation motion or discovery should have been conducted after the court decided Johnson's motion for partial summary judgment, and that he should be awarded "judgment as a matter of law on the pleadings." (*Id.* at 9.)

To the extent Whitten seeks to preclude Johnson from introducing the retained video footage or any other exhibits at trial, Whitten's motion is denied without prejudice for two reasons. First, because pretrial deadlines were previously suspended, Johnson has not yet filed his lists of proposed witnesses and exhibits. For that reason, any motion to exclude exhibits is premature. *See, e.g.*, *Sanchez v. M&F, LLC*, No. 6:17-cv-01752, 2019 U.S. Dist. LEXIS 241744, at *2 (M.D. Fla. July 11, 2019) (denying the plaintiff's motion to exclude witnesses as premature since the parties had not yet exchanged witness and exhibit lists); *Watty v. Sheriff of Clarendon Cnty.*, No. 4:10-cv-02056, 2012 U.S. Dist. LEXIS 37067, at *13 (D.S.C. Jan. 30, 2021) (denying the plaintiff's motion in limine as premature since a date for trial had not been set). Second, there has been no finding of spoliation at this stage of the proceedings and, thus, there is currently no basis for the court to exclude the preserved video footage as a sanction against Johnson.

Additionally, to the extent Whitten objects to the order in which motions have been addressed by the court, he has not suffered any prejudice as a result of the court ruling on his spoliation motion or any other matters after deciding Johnson's motion for partial summary judgment. As indicated above, the court *denied* Johnson's motion in its entirety. Accordingly, all of Whitten's claims remain to be tried, and none of his objections warrant the entry of judgment in his favor at this stage of the litigation.

### III. Conclusion

For these reasons, Whitten's motion for spoliation of evidence (ECF No. 50) and his motion in limine (ECF No. 79) will be denied without prejudice. Johnson will be required to file a response to Whitten's reply brief (ECF No. 88), which the court construes as a second motion for spoliation sanctions, within 14 days.

The clerk is directed to forward a copy of this Memorandum Opinion and accompanying Order to the parties.

**ENTERED** this 25th day of March, 2022.

*/s/ Thomas T. Cullen*
HON. THOMAS T. CULLEN
UNITED STATES DISTRICT JUDGE